IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.:**

ROBERT DAVIS, and

BRENDA DAVIS

   Plaintiffs,

v.

JUAN RIZZI, and

OGNOTZ HOME DESIGN

   Defendants.

---

## COMPLAINT

---

PLAINTIFFS, by and through their attorneys, Williams Intellectual Property, for their Complaint against Defendants, allege, on knowledge as to their own actions, and otherwise on information and belief, as follows:

### Preliminary Statement

1. This is an action for breach of contract, fraud, misrepresentation, concealment, negligence, conversion, unjust enrichment, defective construction, breach of express warranty, and unfair or deceptive trade practices pursuant to § 6-1-105 of the Colorado Revised Statutes.

2. Defendants were hired in 2021 to construct a modular home in Hartsel, Colorado. Despite receiving more than $728,000 in payments over a three-year build to assemble the

prefabricated home (which itself cost $336,782.17), the home is still not complete and is, in fact, uninhabitable.

3.  Plaintiffs seek compensatory and exemplary damages of at least $1,596,931 exclusive of fees and costs. C.R.S. § 13-20-806(2).

## Jurisdiction

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). This action is between citizens of North Carolina and citizens of Colorado and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## Venue

5.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendants have at all times pertinent to this action been residents of Colorado. Pursuant to 28 U.S.C. § 1391(b)(2), all the acts or omissions arising this claim occurred in this district. Further, the property subject to this action is situated in this district.

## Construction Defect Action Reform Act

6.  Pursuant to C.R.S. §§ 13-20-803 and 13-20-803.5, a list of construction defects and a notice of claim were personally served upon Defendants on 24 Aug 2023.[1] **Exhibit A**, 1.

7.  Defendants did not respond, nor make any arrangements to inspect the property, and no offer of settlement or remediation was made.

---

[1]  Pursuant to the Contract ¶ (11)(2)(2) (**Exhibit b**, 5), Mr. Rizzi was also served via registered mail, return receipt requested: first on 31 Jul 2023, and then again on 17 Aug 2023, to his office address in Bailey setting forth the breach of contract.

## PARTIES

8.  Plaintiff ROBERT DAVIS is an individual who resides in WADE, NORTH CAROLINA.

9.  Plaintiff BRENDA DAVIS is an individual who resides in WADE, NORTH CAROLINA.

10. On information and belief, Defendant JUAN RIZZI is an individual who resides in BAILEY, COLORADO.

11. On information and belief, Defendant OGNOTZ HOME DESIGNS is a sole proprietorship under the ownership and control of JUAN RIZZI and is, therefore, a domiciliary of BAILEY, COLORADO.

## FACTS

12. Plaintiffs contracted with Defendants to construct a modular home at 197 SOD ROOF RUN, HARTSEL, COLORADO, 80449, end of February, 2021. **Exhibit B**.

13. The land is remote, off-grid, a southern aspect at 9,000 feet elevation just less than sixteen miles from U.S. Highway 285 along an unpaved road. Views of Jack Rabbit Hill, Cameron Mountain, Green Mountain, and Aspen Ridge sweep up from the southwest over the Pike and San Isabel National Forest; Black Mountain rises to the East.

14. Plaintiffs live almost 2,000 miles away, in North Carolina. Plaintiff ROBERT DAVIS serves the UNITED STATES OF AMERICA as a Command Chief Warrant Officer in the UNITED STATES ARMY SPECIAL OPERATIONS COMMAND. As such, Plaintiff ROBERT DAVIS is busy on assignment defending our country; he hired Defendants to perform tasks under Contract as his agents. Defendants knew, or reasonably should have known, that Plaintiffs would rely on

Defendants' competency, good faith, and plain dealing in performing under the Contract in fulfilling their agency.

15.  Defendants expressly represented sufficient competency and expertise to accommodate the location, to develop the site, and prepare the foundation for setting the modular home, which was originally scheduled to be delivered around the end of MAY 2021, for a summer build. **Exhibit B**, 14. Defendants expressly represented they were competent, knowledgeable, experienced, and skilled enough to coordinate the build at the location. "I am an ideal GC for your project considering location and type of home," MR. RIZZI wrote. **Exhibit C**, 1. "My ten years experience in both new home construction, as well as full renovation gives me the leg up with modular construction." ***Id***.

16.  The executed Contract set forth an estimate of $300,214 to complete the job. The initial Contract was modified 05 JUN 2021, to accommodate a walk-out basement. **Exhibit D**. This changed the scope of work some, by requiring increased excavation of the dwelling footprint for a lower entrance. The foundation was scheduled for completion by 15 OCT 2021. ***Id.***, 14.

17.  On information and belief, at the time of modifying the Contract, Plaintiff had already paid Defendants $68,626 for excavation, essentially grading the driveway and installing the septic tank and leach field. The new Contract amount was thus $261,261. ***Id.***, 1. Contracted terms as modified, then, called for total consideration of $339,887.

18.  The Contract was again modified on 27 OCT 2021. ***Id.***, 19-25. The only material change to the terms was the General Contractor fee, which increased from $21,572 to $31,160.

19. Performance of the Contract was ongoing, Plaintiffs had at this point paid $123,233.55 out of pocket (including the $68,626 to Defendants). **Exhibit M**, 1. And on 29 Oct 2021, Plaintiffs wired Defendants an additional $42,366 for the home excavation and garage construction. *Id*.

20. The original schedule required the driveway to be graded and completed before end of Spring 2021. **Exhibit B**, 11. This was necessary to enable access to the site for preparing and pouring the foundation. But, as of the date of filing this action, the driveway is not complete. There is no roadbed. A culvert important for diverting drainage under the road is not installed. The driveway is – after three years of excavation – a compressed, coarse gravel track. **Exhibit A**, 5.

21. After more than a year of stops and starts, on 09 Aug 2022, already in receipt of payments of at least $225,997 to them directly (of $280,668.30 in total disbursements), Defendants sent Plaintiffs an updated schedule finalizing performance. The modular home would be completed and ready for delivery by Rocky Mountain Home Builders on 08 Sep 2022. Delivery was finally scheduled for 12 Sep 2022; pre set inspection, 19 Sep 2022; final set date, 26 Sep 2022. **Exhibit L**, 1-2. Solar was meant to be installed 15 Sep 2022. *Id.*, 2.

22. But on 13 Sep 2022, Defendants sent Plaintiffs notice of delay. Pre set inspection would now be 05 Oct 2022; delivery of home, 25 Oct 2022; and set, 01 Nov 2022. *Id.*, 5-7. Plaintiffs sent Defendants $242,441 the same day. **Exhibit M**.

23. But Defendants had not poured the foundation. The site was not ready for the home.

24. On information and belief, after almost two years of excavating, on 11 Oct 2022, Defendants finally poured the foundation footers. But Defendants did not complete the foundation, despite receipt of funds. So, on 28 Nov 2022, Defendants sent Plaintiffs another updated

schedule, pushing vital operations into winter months: Now delivery was scheduled for 19 Dec 2022; the pre set inspection 20 Dec 2022; and set 09 Jan 2023. **Exhibit L**, 8-9.

25. Shortly before the set date, though, Defendants again altered their schedule, pushing the dates back further: Set would now be 09 Feb 2023. **Exhibit L**, 12.

26. Three months after pouring the footers, then, on 10 Jan 2023, Defendants managed to pour the foundation walls. But Defendants failed to properly prepare the forms and did not properly agitate or homogenize the concrete. The pour was defective: cold joints, discontinuities, hairline cracking, spalling, honeycombing, and homemade "patching" weaken the foundation beyond salvage. **Exhibit E**, 14. *See also* **Exhibit A**, 6-12, 27-44, 51-54, 61, 66, 71 *et seq.*

27. The foundation is not level, portions of the north wall are 1.5 inches higher than the south wall and there is a running variance of approximately ¾ inch every couple of feet around the entire perimeter. **Exhibit E**, 2.

28. The foundation is not consistent in thickness: the east side of the foundation includes large blowouts, uneven intrusions from failed forms, obtruding into the home footprint by approximately 5 to 6 inches. The wall bulges to 14 inches in thickness in some places. **Exhibit E**, 3-4.

29. The foundation is not square. **Exhibit E**, 5.

30. Despite this, after pouring the defective walls, Mr. Rizzi represented to Plaintiffs via text message that, "It was a bitch but your walls were poured and look great." **Exhibit F**, 73. Mr. Rizzi sent pictures of the walls at night and from a distance, concealing the defects. *Id.*, 74.

31. With the foundation finally "ready," the home was delivered on 22 Feb 2023, where it sat on site for the rest of winter and for more than three months.

32. On 07 MAR 2023, MR. RIZZI applied for a set only permit from PARK COUNTY BUILDING DEPARTMENT. **Exhibit G**, 1. MR. RIZZI named MR. CHARLES KAY of HERITAGE HOMES OF THE VALLEY as the subcontractor licensed by the County (License No. 01486) to perform the set. ***Id.***

33. Twenty days later, on MAR 27, MR. RIZZI texted a new schedule to Plaintiffs – framing to be finished by 07 APR 2023; plate inspection, 11 APR; and on 13 APR, home would be set. **Exhibit F**, 90-91.

34. Problems persisted, though. Defendants' work failed PARK COUNTY BUILDING DEPARTMENT inspections at least four times: the foundation wall install pads, on 07 DEC 2022; the deck footer, on 13 FEB 2023; the Pre Set Frame/Anchor Bolts, on 20 MAR 2023; and the Pre Set Frame/Anchor Bolts a second time, on 26 APR 2023. **Exhibit G**, 7-10. Defendants concealed these failures from Plaintiffs, stating on 26 APR 2023 only that, "The inspector failed the inspection because we [sic] wanted a certificate from the welder who welded the metal in your home. The plans call for it so he is requiring it even though he says the welds look amazing." **Exhibit F**, 105.

35. But the welds do not "look amazing." *See* **Exhibit A**, 27, 29. Neither was the absence of the certificate the only grounds for failing the inspection. **Exhibit G**, 10. Nor was this inspection the only inspection MR. RIZZI had failed. ***Id.*** 7-10.

36. On information and belief, the welding was performed by MR. RIZZI himself, or another individual with little or no experience welding under MR. RIZZI's direction.

37. On 28 Apr 2023, Mr. Rizzi admitted via text that he was "taking the test for *my* welding certificate now," arising an inference that he himself had done the welding. **Exhibit F**, 106-108 (emphasis added).

38. Mr. Rizzi subsequently submitted a weld sample on 01 May 2023 to Intermountain Testing Company; thence he acquired the certificate meant to be onsite *prior* to welding the structural beams for mounting the home. **Exhibit H**. On information and belief, Mr. Rizzi positioned this certificate as grounds for passing the inspection. **Exhibit F**, 109.

39. Finally, the set date approached. Mr. Rizzi expressly represented to Plaintiffs that "half a dozen qualified professional subcontractors" would be present at the set "to ensure we achieve our mission," for which an upfront payment of "25k" was induced from Plaintiff to cover the crane rental and the "tie-together" ahead of the set. **Exhibit C**, 86 (email); **Exhibit F**, 113 (text). On May 10, Plaintiff wired Defendants $20,493 (the invoiced amount). Plaintiffs had already sent $72,945 on 01 Mar 2023 and $45,000 on 19 Apr 2023 at Mr. Rizzi's insistence that additional payments were necessary to complete the job in short order and procure a certificate of occupancy. **Exhibit M** (payments).

40. Plaintiff Robert Davis flew out from North Carolina on 11 May 2023 to inspect the set. But Defendants had canceled the set that morning because, Defendant stated, "the crane got stuck on route 24 coming over wilkinson pass." **Exhibit F**, 121. Plaintiff extended his stay to be present for the rescheduled set, which Mr. Rizzi stated was pushed to 13 May.

41. Come 13 May, though, Defendants pushed the set back to 16 May; then 19 May; and then – after Plaintiff had flown back to North Carolina for work – the set proceeded but was fraught

with difficulties. It took two days and multiple lifts to seat the home. By end of 24 MAY, only one-half of the home was seated on the foundation. **Exhibit F**, 137. The next half was finally seated on 25 MAY. "Home is set," MR. RIZZI texted, with a picture from afar. *Id.*

42. MR. RIZZI did not include evidence that the home was unable to seat properly on the foundation. **Exhibit F**, 137-138. Defendants must have known the foundation was problematic – they attempted to level the home with shims and irregularly-sized lumber. **Exhibit E**, 2. *See also* **Exhibit A**, 55-59, 68, 71, 77, 79. They attempted to winch the home halves together to maintain a join. **Exhibit A**, 78. Despite these unconventional efforts, the home is not properly flush. **Exhibit E**, 5. *See also* **Exhibit A**, 76-79,93-94,98-99.

43. On information and belief, on 24 and 25 MAY 2022, Defendants did *not* use the licensed subcontractor permitted by the County to set the modular home. **Exhibit I**. On information and belief, no qualified subcontractors were present on site. On information and belief, under color of the permit, MR. RIZZI attempted to set the home himself.

44. But due to the defective foundation, the home is not able to sit on the foundation. **Exhibit E**, 5, 14. The home is damaged in seating on the foundation. *Id.*, 12-14. The home does not have adequate bearing support. *Id.* The home is visibly cracking against disproportionate forces that are wrenching the structure contrary to its design. *Id.* The two halves of the home cannot be joined. *See, e.g.,* **Exhibit A**, 24-25, 63, 78.

45. At a minimum, the home must be lifted, the foundation scraped and repoured, the framing redone, and then the home (or a new home) reset. **Exhibit E**, 14.

46. Defendants concealed these material defects in construction from Plaintiffs. Defendants willfully misrepresented the quality of workmanship to Plaintiffs to induce increased payments, to elude liability, to evade remedy.

47. Further, Defendants did not trench piping deep enough for plumbing to properly operate. On information and belief, Defendants laid the main sewer lines *above* the level of the basement floor. **Exhibit A**, 43, 85-86. At least one principal channel is obstructed by a structural support. *Id.*, 45. It is not clear whether the septic tank is deep enough to effectuate proper drainage through the basement. *Id.*, 60. On information and belief, Defendants did not acquire a plumbing permit but commenced plumbing work with unqualified or underqualified personnel.

48. Defendants used different-sized, non-spec lumber in framing. **Exhibit E**, 10. Defendants used damaged lumber in framing. *Id.* Defendants omitted stud packs at corners, omitted connections, and left entire spans without a top plate. *Id.* The framing is not flush (and maybe cannot *be* flush) – there are large gaps in the top plate, bottom plate, and in the sheathing exposing the interior to the elements. *Id.* Defendants insensibly shimmed the top plate in load bearing portions with plywood. *Id.*

49. Despite continuing to bill for work allegedly performed – requiring payment to "complete" the job in short order – positioning ever-impending, yet always-shifting deadlines that urged and compelled payments – Defendants *never* completed the framing, the garage, the decks, the porches, the plumbing, the electrical, the heating, the driveway, and never produced – let alone installed – the paid-for solar array, generator, or propane tank.

50. After nearly three years of "construction," Plaintiffs have spent at least $1,119,664.47 for a modular, prefabricated home which remains uninhabitable.

51. Plaintiffs are materially harmed by Defendants' acts and omissions. Not only are Plaintiffs significantly out of pocket for a home they cannot inhabit, payments remain due on the construction loan drawn to cover the increased costs. Worse, interest rates have skyrocketed – Defendants' acts and omissions have prevented Plaintiffs from converting the construction loan into a mortgage. Mortgage rates at the end of September 2021 were under 3%. Today, rates are over 8%.

52. And, somehow, the entire job needs to be redone.

## COUNT 1: BREACH OF CONTRACT
### As against Juan Rizzi and Ognotz Home Designs

53. Plaintiffs repeat and reallege paragraphs 1 through 52 hereof, as if fully set forth herein.

54. Plaintiffs and Defendants contracted for the construction of "the project described on 'Exhibit-A Proposal Specifications'; located at, 197 Sod Roof Run Hartsel CO 80449" on 23 Feb 2021. This Contract was updated 05 Jun 2021 to include a walk out basement, which increased the required excavation some, but not significantly to effectuate massive delay.

55. The contract estimated completion by 01 Nov 2021. Even though some delay was created by the 05 Jun 2021 contractual change that was beyond Defendants' control, and by an appraisal required for originating a construction loan in August to October of 2021 to pay for the increasing costs, the project was nonetheless subject to frequent and unreasonable delays. Almost three years after Contract, the home remains uninhabitable: There is no plumbing, electrical, garage, deck, heating, or solar, and the work which was performed is materially defective.

56. The home is not joined. The foundation is not level. The foundation is not square. The foundation was not constructed according to the construction documents and did not comply with industry standards. *See* **Exhibits A** and **E**.

57. The framing is not flush or true. Sections of the top plate are entirely missing. Large gaps inform the sheathing, the top plate and bottom plate. Non-spec lumber and damaged lumber were incorporated into the build. The driveway is not complete. The plumbing that is installed is not installed properly; it was not installed by licensed plumbers. Substantial defects throughout the structure exist that have not been remedied. ***Id***.

58. The project was subject to extreme and unreasonable overages in costs. Plaintiff has paid Defendants at least $728,646 (not including the costs for the modular home), almost 2.5 times the original estimate, and the home is still unusable. The home is not complete. Reasonable estimates for the job are $322,589. **Exhibit J**. The modular finish and above-ground completion should have been, at most, $230,000; excavation and foundation around $50,000. ***Id***.

59. Plaintiffs overperformed: Plaintiffs paid Defendants more than double the estimated costs. Plaintiffs timely paid for materials, equipment, and appliances which were not delivered, and for professionals who were not employed. Plaintiffs paid for labor that was not used.

60. On information and belief, Plaintiffs paid Defendants at least $215,431 for goods and services that were never delivered nor performed. **Exhibit K**. Plaintiff paid over $500,000 for work allegedly performed, but work which was nonetheless substandard and defective – work that has been grossly overcharged.

61. Defendants are in material breach of contract.

62. Plaintiffs are damaged by Defendants' nonperformance and material breach. Plaintiffs are entitled to remedies for actual damages and such punitive and consequential damages as may be assessable at law, determined at trial, including, where applicable, reasonable costs and attorney's fees, and such other and further relief at law and in equity as this Court deems just.

## COUNT 2: BREACH OF EXPRESS WARRANTY
### As against Juan Rizzi and Ognotz Home Designs

63. Plaintiffs repeat and reallege paragraphs 1 through 62 hereof, as if fully set forth herein.

64. Under the terms of Contract, Defendants expressly warrantied material and labor to be free from material defects, for one year from date of substantial completion. **Exhibit D**, ¶ 6.

65. The home is not substantially finished.

66. Defendants did not reply to Plaintiff's Claim Notice and List of Defects sent to Defendants pursuant to C.R.S. §§ 13-20-803 and 13-20-803.5.

67. After reasonable notice, Defendants did not repair nor replace the foundation, which is fraught with material defects and, according to a structural engineering firm, "not salvageable." **Exhibit E**, 14.

68. Defendants have not repaired nor replaced framing which is fraught with material defects. Defendants have not repaired nor replaced the plumbing, the main sewer lines of which were not installed deep enough.

69. Plaintiffs are damaged by Defendants' breach of express warranty. The entire foundation needs to be redone; the plumbing needs to be redone; the framing needs to be redone.

70. Plaintiff is entitled to compensatory damages and, where assessed by this Court, consequential damages and punitive damages, an award of reasonable attorney's fees and costs, at

an amount to be determined at trial, and such other and further relief at law and in equity as this Court deems just.

### COUNT 3: NEGLIGENCE
### As against JUAN RIZZI and OGNOTZ HOME DESIGNS

71. Plaintiffs repeat and reallege paragraphs 1 through 70 hereof, as if fully set forth herein.

72. Pursuant to Colorado's Construction Defect Action Reform Act, a negligence claim seeking damages for a construction defect may be asserted only where there is, *inter alia*: (a) actual damage to real or personal property; or, (b) actual loss of the use of real or personal property. Colo. Rev. Stat. Ann. § 13-20-804(1)(a) and (b) (West).

73. Defendants had a contractual duty to Plaintiffs to construct the home according to industry standards and practices and in good faith. But Defendants did not follow industry standards and practices. Defendants did not use competent or licensed professionals to perform according to the terms of the Contract.

74. Defendants did not act in good faith: Defendants misrepresented to Plaintiffs and the County that licensed professionals would be subbed.

75. Defendants' acts and omissions resulted in negligent and defective construction. Plaintiffs' real property is damaged. Plaintiffs' real property is unusable.

76. The home is cracked and cracking; the uneven and non-square foundation is forcing the home into positions it was not designed to withstand.

77. Defendants negligently poured a foundation noncompliant with industry standards, contrary to industry practices. **Exhibit E**, 14. The foundation is extremely unlevel and uneven; filled with discontinuities, honeycombing, hairline fractures, cold joints, and hand-rendered

"patchwork"; the foundation must be scraped and repoured: "If the foundation were to remain, due to the structural issues discussed above, the modular unit will experience ongoing issues with structural distress and displacement." *Id.*

78. Defendants did not use a licensed plumber and negligently laid pipes at incorrect depths. **Exhibit A**, 43, 45, 64, 85, 86.

79. Defendants negligently coordinated the build arising unnecessary, repeated, and unreasonable delays.

80. Defendants' acts and omissions resulted in unnecessary exposure of the unfinished modular home (including its interior) to the elements, resulting in damage to the prefabricated forms purchased by Plaintiffs and entrusted in good faith to Defendants' care.

81. Plaintiffs are harmed by Defendants' negligent acts and omissions. Plaintiffs are entitled to compensatory damages and, where the Court deems just, consequential damages, punitive damages, reasonable attorney's fees and costs, at an amount to be determined at trial, and such other and further relief at law and in equity as this Court deems just.

## COUNT 4: DECEPTIVE TRADE PRACTICES
### As against Juan Rizzi and Ognotz Home Designs

82. Plaintiffs repeat and reallege paragraphs 1 through 81 hereof, as if fully set forth herein.

83. A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person, "Refuses or fails to obtain all governmental licenses or permits required to perform the services . . . as agreed to or contracted with a consumer." Colo. Rev. Stat. Ann. § 6-1-105(1)(z) (West).

84. Defendants committed a deceptive trade practice in violation of the Colorado Consumer Protection Act when they applied for a set permit from PARK COUNTY and listed a subcontractor licensed by the County as competent to perform the set but then did not use the licensed subcontractor permitted by the County. Instead, without a license, and under color of the permit, Defendants performed the set themselves to fraudulently conceal the defective foundation they had wrought and to unjustly enrich themselves by pocketing funds they represented were needed to pay licensed professionals whom they did not in fact employ.

85. Plaintiff is harmed by Defendants' deceptive trade practice. Defendant is subject to the treble damages provision pursuant to Colo. Rev. Stat. § 6-1-113(2)(a)(III), up to $250,000. Colo. Rev. Stat. Ann. § 13-20-806 (West).

86. Plaintiff requests compensatory damages and punitive damages, plus its reasonable attorney's fees and costs, at an amount to be determined at trial, and such other and further relief at law and in equity as this Court deems just.

## COUNT 5: ACTUAL FRAUD
### As against JUAN RIZZI and OGNOTZ HOME DESIGNS

87. Plaintiffs repeat and reallege paragraphs 1 through 86 hereof, as if fully set forth herein.

88. Defendants engaged in fraudulent concealment and material misrepresentation in a pattern of deception to induce Plaintiff's continued payment for services Defendants had no intention of performing.

89. Defendants fraudulently promised to complete tasks and deliberately misrepresented costs to elicit payment under threat of repeated deadlines, and then just kept the money.

90. Defendants made false statements of existing and material facts at least when:

a.   Defendants represented to Plaintiff that licensed subcontractors would be used to set the home but, in fact, Defendants did not have any licensed subcontractors agreeing to set the home;

b.   Defendants forwarded the name of a licensed subcontractor to PARK COUNTY BUILDING DEPARTMENT, to induce permitting, but then did not employ the licensed subcontractor under the aegis of the permit;

c.   Defendants affirmed the foundation was suitable for the set; and

d.   Defendants positioned actions of subcontractors to excuse and/or conceal Defendants' own negligent acts and omissions.

91.  Defendants failed to disclose material facts they were obligated to disclose at least when:

a.   Defendants failed to notify Plaintiffs of defects with the concrete foundation;

b.   Defendants deliberately misrepresented the state of the foundation by stating the walls "look great" and by showing photographs that deliberately excluded the defects;

c.   Defendants failed to disclose to Plaintiff the failed inspections of the premises; and

d.   Defendants did not obtain a set permit or a plumbing permit prior to setting the home or laying pipe.

92. Defendants knew that Plaintiffs would rely on their statements and omissions. Defendants intended that Plaintiffs would rely on their statements and omissions. Defendants knew their statements were false and misleading. Defendants willfully and maliciously intended to mislead

Plaintiffs. Defendants engaged in fraudulent misrepresentation and concealment to induce payments from Plaintiffs and to conceal their own liability.

93. Plaintiffs relied on Defendants' false statements and omissions. Plaintiffs were damaged in reliance on Defendants' fraudulent statements and omissions.

94. Had Plaintiffs known the true extent of Defendants' incompetence, Plaintiffs could have hired someone else.

95. Absent Defendants' fraud, Plaintiffs would have discovered the defective foundation prior to the setting of the home.

96. Absent Defendants' fraud, Plaintiffs could have sought remedies under Defendants' express warranty early on to mitigate the harm.

97. Absent Defendants' fraud, Plaintiffs would not have paid Defendants more money in gross excess of the contracted amount: indeed, material defects, costly errors, and gross overpayments could have been avoided.

98. Due to Defendants' fraud, Plaintiffs are entitled to compensatory and consequential damages at an amount to be determined at trial, an amount the Court deems just. Due to Defendants' pattern of deceptive intent, Plaintiffs request exemplary damages, reasonable attorney's fees and costs, and such other and further relief at law and in equity as this Court deems just.

## COUNT 6: CONVERSION (CIVIL THEFT) FIRST
### As against JUAN RIZZI and OGNOTZ HOME DESIGNS

99. Plaintiffs repeat and reallege paragraphs 1 through 98 hereof, as if fully set forth herein.

100.  All funds disbursed to a contractor under a construction contract are held in trust for the payment of subcontractors, laborers, suppliers, and or materials. Colo. Rev. Stat. Ann. § 38-22-127 (West). "Any person who violates the provisions of [§§ 38-22-127(1) and (2)] commits theft, as defined in section 18-4-401, C.R.S." *Id.* (That is, criminal theft.)

101.  Upon demand by Defendants, Plaintiffs paid Defendants $20,493 to hire RMS CRANES to hoist the prefabricated forms and set the home. But Defendants did not pay RMS CRANES.

102. As a result of Defendants' non-payment, RMS CRANES has attached a mechanic's lien against the property seeking satisfaction of the debt. On information and belief, other subcontractors were not paid even though Plaintiffs had paid Defendants for the subcontractors' work.

103. Defendants have converted funds meant to be held in trust to pay subcontractors for services to be performed. Defendants have exposed Plaintiffs to a claim on their property. Plaintiffs must dispose of the lien.

104. Plaintiff is entitled to repayment of the converted funds in satisfaction of the lien, plus interest from the time of the conversion.

### COUNT 7: CONVERSION (CIVIL THEFT) SECOND
### As against JUAN RIZZI and OGNOTZ HOME DESIGNS

105. Plaintiffs repeat and reallege paragraphs 1 through 104 hereof, as if fully set forth herein.

106. Conversion results from any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. *Internet Archive v. Shell,* 505 F. Supp. 2d 755, 762 (D. Colo. 2007).

107. Plaintiffs paid Defendants for equipment which was never delivered: $5,500 for a generator; $20,000 for solar panels; and $9,000 for a propane tank. On information and belief, Plaintiffs paid $65,520 for lumber for trusses and framing for the garage which was never delivered or installed.

108. Defendants did not respond to Plaintiffs demand to rectify its incomplete and defective construction. Defendants have not furnished or installed the goods; Defendants have not returned Plaintiffs' money.

109. Plaintiffs are entitled to remuneration of the converted funds and such other and further relief as this Court deems just.

## COUNT 8: UNJUST ENRICHMENT
### As against Juan Rizzi and Ognotz Home Designs

110. Plaintiffs repeat and reallege paragraphs 1 through 109 hereof, as if fully set forth herein.

111. Defendants unjustly enriched themselves by overcharging for services which they either failed to perform or performed partially and defectively.

112. Defendants unjustly enriched themselves by billing for subcontractors they didn't use.

113. Defendants took payment for goods and services which they did not deliver and did not perform.

114. Plaintiff is entitled to disgorgement of all funds unjustly enriching Defendants at an amount to be determined at trial and such other and further relief as this Court deems just.

## PRAYER FOR RELIEF

**WHERFORE** Plaintiffs pray for relief. Plaintiffs request judgment as follows:

A.  On COUNT ONE, damages for material BREACH OF CONTRACT, including all damages arising from the breach that were reasonably foreseeable at the time the Contract was formed;

B.  On COUNT TWO, compensatory and exemplary damages for BREACH OF EXPRESS WARRANTY guaranteeing material and labor to be free of material defects;

C.  On COUNT THREE, compensatory damages for NEGLIGENCE to cover the costs of remedying all defects in construction, including lifting the house, scraping the defective foundation, remaking the foundation, correcting the plumbing, repairing (or where necessary, replacing) the home, and repairing and completing the driveway;

D.  On COUNT FOUR, exemplary damages for DECEPTIVE TRADE PRACTICES up to three times Plaintiffs' actual damages or the statutory maximum amount, whichever is less;

E.  On COUNT FIVE, exemplary damages for actual fraud;

F.  On COUNT SIX, restitution of all CONVERTED funds required to unlien the premises from Defendants' theft of funds meant to be held in trust;

G.  On COUNT SEVEN, restitution of all CONVERTED funds for equipment paid for, but not delivered;

H.  On COUNT EIGHT, disgorgement of all funds UNJUSTLY ENRICHING Defendants due to services, materials, and equipment paid for by Plaintiff but never delivered;

I.  For a total amount, avoiding all duplicative recovery, of not less than $1.6 million; and

J.  Granting Plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs ROBERT DAVIS and BRENDA DAVIS demand a trial by jury on all claims.


Dated: 31 OCT 2023

LITTLETON, COLORADO

Respectfully submitted,

<u>s/ Ben Williams</u>
**Ben Williams**
Williams Intellectual Property
1100 W Littleton Blvd
Ste 440
Littleton, CO 80202-1234
Telephone: (720) 328-5343
E-mail: ben@wip.net

Attorney for Plaintiff

## **VERIFICATION**

I have read the foregoing Complaint and know its contents. I am the Plaintiff, ROBERT DAVIS, a party to this action. The matters stated in the foregoing Complaint are true to my own knowledge, except as to the matters which are therein stated upon information or belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.

Executed at _WADE_, _NORTH CAROLINA_ this _30_ day of _October_, 2023

_____
ROBERT DAVIS

I have read the foregoing Complaint and know its contents. I am the Plaintiff, BRENDA DAVIS, a party to this action. The matters stated in the foregoing Complaint are true to my own knowledge, except as to the matters which are therein stated upon information or belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.

Executed at _WADE_, _NORTH CAROLINA_ this _30_ day of _October_, 2023.

_____
BRENDA DAVIS