IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02861-KAS

ROBERT DAVIS, and
BRENDA DAVIS,

    Plaintiffs,

v.

JUAN RIZZI, and
OGNOTZ HOME DESIGN,

    Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Defendants' **Motion to Compel Arbitration** [#22] (the "Motion"). Plaintiffs filed a Response [#23], and Defendants filed a Reply [#24]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law. For the reasons set forth below, the Motion [#22] is **GRANTED**.[1]

    Separately, Defendants have filed a Motion to Stay Discovery [#33]. Plaintiffs have filed a Response [#34], and Defendant has filed a Reply [#35]. Because the Court finds that this matter is subject to mandatory arbitration, this matter shall be **ADMINISTRATIVELY CLOSED**, subject to reopening for good cause. The Motion to Stay Discovery [#33] is **DENIED AS MOOT**.

---

[1] The parties proceed before the undersigned on consent pursuant to 28 U.S.C. § 636(c). *Consent* [#27]; *Order of Reference* [#29].

## I. Background

This matter arises from Defendants' alleged breach of an Owner Agreement in which they agreed to construct a modular home for Plaintiffs in Hartsel, Colorado. *Compl.* [#1] at ¶¶ 1-2; *Motion* [#22] at 1-2; *Am. Owner Agreement* [#2-11]. Plaintiffs allege that the construction was poorly done, and that the home is still incomplete and uninhabitable. *Compl.* [#1] at ¶ 2.

### A.   The Arbitration Clause

The Owner Agreement, attached as Exhibit B to the Complaint [#1], contains the following arbitration clause:

> Prior to commencing any action or arbitration arising out of claimed default by either party under this Contract, the parties agree to make in good faith effort to mediate their differences using an independent mediator. If the parties are unable to resolve their differences through mitigation [sic], then the parties agree to submit their disputes and controversies to binding arbitration conducted in Denver, Colorado. The arbitration shall be binding on both parties, and judgements on the award or decision of the arbitrator may be entered in any court of competent jurisdiction. Prior to the award or decision, the arbitrators' fees and costs shall be shared equally by Owner and Contractor. After the award or decision, the arbitrator's fees and costs shall be assessed against the non-prevailing party in accordance with Paragraph 11 Section 4.[2] Unless otherwise agreed in writing, the Contractor may continue with construction, and if so, the Owner shall continue to make payments to the Contractor in accordance with this Contract. The agreement of the parties to submit any dispute or arbitration shall not preclude the Contractor from filing a mechanic's lien statement against the Property and filing a mechanic's lien action as necessary to perfect a lien claim of the Contractor against the Property. After the perfection of such rights under Colorado mechanic's lien statues, action shall be stayed and submitted to arbitration for resolution of the dispute.

---

[2] The Court notes that Paragraph 11, Section 4 is the choice-of-law provision. The attorney fees provision is found at Paragraph 11, Section 3. *Am. Owner Agreement* [#2-11], ¶ 11.3, 11.4.

*Am. Owner Agreement* [#2-11], ¶ 11.1.1.[3]

**B.     Other Clauses**

The Owner Agreement also contains a remedies clause immediately following the arbitration clause. It states that:

> 1. If the Owner is in default under this Contract, then the Contractor shall have the right to terminate this Agreement if the default by the Owner is not cured within Ten (10) days after written notice of default from the Contractor to the Owner. In addition to any other remedies available to the Contractor as a result of the default by the Owner, the Contractor shall have the right to recover from the Owner all damages for delay, lost profits, unpaid sums due and owing under this contract, the right to file, perfect and foreclose on the Property pursuant to the Colorado mechanic's lien law and for such and further relief as may be available to the Contractor at law or in equity. Except as provided in Paragraph 9 above, the Contractor may suspend its performance during any uncured event of default by the Owner, and recover all damages occasioned by such delay in performance.
>
> 2. If the Contractor is in default under this Contract, the Owner may declare a breach in this contract and provide the Contractor with written notice of said breach. If after 10 days the Contractor has failed to remedy the breach of contract, the Owner may give the General Contractor a second written notice. If after 10 days after receipt of the second notice, the Contractor has failed to remedy the breach of this Contract, the Owner may immediately terminate this Contract for said breach by providing Contractor a written notice to that effect. When the Owner terminates this Contract, Owner shall be entitled to other legal and equitable remedies.
>
> 3. Each party hereby disclaims and waives any claims for the following remedies and damages for any matters related to this Contract, whether a claims [sic] for the following remedies and damages for any matters related to this Contract, whether a claim is made on the basis of contract, tort, or any other theory or basis at law or in equity: (i) punitive or exemplary

---

[3] Plaintiffs also attached the original "Contract" as Exhibit B to their Complaint, which has a few minor differences but nothing relevant to the Court's analysis—for example, the default notices were extended from seven to ten days; Defendant Rizzi is identified as "Contractor" in the Amended Owners Agreement rather than "General Contractor"; and the Contractor's damages in event of Owner breach are modified to omit reference to "a cancellation fee." *Compare Owner Agreement* [#2-9], ¶ 11, *with Am. Owner Agreement* [#2-11], ¶ 11. Defendants cited to both exhibits in its Motion [#22]. *See Motion* [#22] at 2 (citing "Compl., Exhibit B ¶ 11.1.1; Exhibit D ¶ 11.1.1").

> damages, (ii) claims for emotional distress or pain and suffering, and (iii) claims for consequential damages (except provided herein).

*Am. Owner Agreement* [#2-11], ¶ 11.2. Finally, the Agreement contains an attorney fees and costs provision:

> If it becomes necessary for either party to enforce provisions of this Contract, whether by litigation, arbitration, or other proceedings, the party who prevails in such a matter shall be entitled to recover from the other party the arbitrator's fees and costs, reasonable attorneys fees, court costs, or other expenses incurred in such litigation, arbitration, or other proceedings."

*Am. Owner Agreement* [#2-11], ¶ 11.3.

Defendant now moves to compel arbitration, arguing that every claim in the Complaint [#1] arises from the Owner Agreement and is therefore subject to the mandatory arbitration clause. *Motion* [#22] at 2. Plaintiffs argue that these other provisions of the Owner Agreement contemplate litigation or other "legal remedies," indicating that arbitration does not govern disputes arising under the Agreement after termination under Paragraph 11.2.2. *Response* [#23] at 4-6.

## II. Legal Standard

"The Supreme Court has 'long recognized and enforced a liberal federal policy favoring arbitration agreements.'" *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 527 U.S. 79, 83 (2002)) (additional internal quotation marks omitted). Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2.

4

In considering a motion to compel arbitration under the FAA, courts apply a standard "'similar to summary judgment practice.'" *Petrie v. GoSmith*, 360 F. Supp. 3d 1159, 1161 (D. Colo. 2019) (quoting *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014)). Where the parties dispute the existence of an agreement to arbitrate, "a court may grant a motion to compel arbitration if there are no genuine issues of material fact regarding the parties' agreement." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quotation omitted). The party seeking to compel arbitration "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman*, 563 F. App'x at 612.

Whether to enforce an arbitration agreement requires a court to employ a two-step process: First, a court must determine whether there exists an agreement that provides the moving party the right to compel arbitration. *Vaughn v. JP Morgan Chase & Co.*, No. 23-cv-02266-CNS-NRN, --- F. Supp. 3d ----, 2023 WL 8702090, at *3 (D. Colo. Dec. 15, 2023) (citing *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018)). If the movant satisfies the first step, the second step requires a court to determine whether the allegations in the complaint fall within the scope of the arbitration provision. *Id.* (citing *Cavlovic*, 884 F.3d at 1057). At this step, courts must give the party opposing arbitration the benefit of all reasonable doubts and inferences. *Id.* (citing *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)).

### III. Analysis

Defendants argue that the Owners Agreement, which contains a broad, binding arbitration agreement, covers each of Plaintiffs' alleged claims. *Motion* [#22] at 4-5. Plaintiffs argue, in Response [#23], that other provisions of the Owners Agreement contemplate the availability of "legal remedies" and "litigation" such that the contract contemplates "bifurcated enforcement" in which a termination of the contract overrides the arbitration clause. *Response* [#23] at 3-5.

**A.   Existence of Arbitration Agreement**

The parties do not dispute that the Owner Agreement contains an enforceable arbitration clause. *Motion* [#22] at 4 (stating that "there is no dispute that a contract was formed between Plaintiffs and Defendants that contained the arbitration clause found in paragraph 11.1.1 of the Owner Agreements"); *Response* [#23] at 5-6 (implicitly acknowledging validity of arbitration clause by arguing that other provisions "elicit contractual intent to override the arbitration clause *in certain circumstances*") (emphasis added). Thus, the Court finds that Defendants have satisfied the first step, proving that an agreement exists that provides the moving party the right to compel arbitration. *Vaughn*, 2023 WL 8702090, at *3.

**B.   Scope of Arbitration Agreement**

Plaintiffs challenge the scope of the arbitration agreement. They argue that their claims fall outside the agreement's scope because they noted Defendants' default in writing but Defendants made no attempt to cure and, thus, "termination of the contract bec[ame] effective, and the arbitration clause may be overridden." *Response* [#23] at 5.

To the extent that Plaintiffs are suggesting that termination of a contract defeats an arbitration clause, this is incorrect. Under both Colorado law and federal common law, a contract's arbitration provision is presumed to survive the expiration or termination of a contract unless there is express or implied evidence that the parties intended otherwise. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998); *Shams v. Howard*, 165 P.3d 876, 879 (Colo. App. 2007) ("termination of a contract does not terminate the effect of an arbitration clause if the dispute arises under the contract") (citing *Christensen v. Flaregas Corp.*, 710 P.2d 6, 8 (Colo. App. 1985)).

Plaintiffs argue that the contract's reference to "other legal remedies," which become available after the Owner terminates the contract, would be rendered meaningless if actions under the contract "were somehow restricted to arbitration only." *Response* [#23] at 3-4 (citing *Owners Agreement* [#2-9], ¶ 11.2.2).[4] They also argue that the contract contemplates "litigation" because the attorney fee provision states that "if it becomes necessary for either party to enforce provisions of this Contract, whether by litigation, arbitration, or other proceedings, the party who prevails . . . shall be entitled to recover from the other party the arbitrator's fees and costs, reasonable attorney's fees, court costs, or other expenses incurred in such litigation, arbitration, or other proceedings." *Id.* at 4 (quoting *Am. Owner Agreement* [#2-11], ¶ 11.3.1) (added emphasis omitted). Plaintiffs propose a creative interpretation which, they argue, harmonizes these references: "bifurcated enforcement." *Id.* at 5. According to Plaintiffs, bifurcation would

---

[4] Plaintiffs' Response [#23] does not specify which version of the Owners Agreement is cited. *See Response* [#23] at 2 (citing "Contract, § 11.2.2"). For consistency, and because the two versions are identical in relevant part, the Court cites the Amended Owners Agreement [#2-11].

allow one enforcement route "where performance is ongoing, but contested, and another where no attempt to cure default arises after adequate notice." *Id*. Plaintiffs further argue that "[w]here default is cited in writing, and no attempt to cure is made, termination of the contract becomes effective, and the arbitration clause may be overridden[.]" *Id*.

Plaintiffs are correct that "legal remedies" are generally available in courts of law, but they cite no authority holding that such remedies are *unavailable* in arbitration. *Response* [#23] at 3. It is a "well-settled rule that any doubt about the arbitrability of an issue should be resolved in favor of arbitration and that arbitrators have broad authority in fashioning remedies[.]" *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 937 (10th Cir. 2001). "Parties who agree to submit matters to arbitration are presumed to agree that everything, both as to law and fact, necessary to render an ultimate decision is included in the authority of the arbitrators." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146-47 (10th Cir. 1982) (citation omitted). Further, the arbitrator's "jurisdiction to make awards is derived from the agreement of submission[.]" *Cont'l Materials Corp. v. Gaddis Min. Co.*, 306 F.2d 952, 954 (10th Cir. 1962). Legal remedies typically include monetary damages, and Plaintiffs do not suggest that arbitrators in this matter would lack authority to award money. *In re Hassan*, 376 B.R. 1, 21 (Bankr. D. Kan. 2007) ("Money damages are usually considered to be a legal remedy.") (citation omitted). As a result, the Owner Agreement's reference to "other legal remedies" neither suggests non-arbitrability of any claims nor implies any exclusion from the broad arbitration clause.

Plaintiffs are also incorrect that the attorney fee clause—which contemplates that a party may need to "enforce provisions of [the Owners Agreement] . . . by litigation,

arbitration, or other proceedings"—evinces the parties' intent to override arbitration. *See Response* [#23] at 4.   The Owners Agreement's attorney fee provision contemplates the exact situation that gave rise Defendants' Motion [#22]: Defendants have resorted to motion practice in this litigation to enforce a provision of the Contract, i.e. the arbitration clause. *Am. Owner Agreement* [#2-11], ¶ 11.3.1; *Compl.* [#1]; *cf. Camelot Invs., LLC v. LANDesign, LLC*, 973 P.2d 1279, 1281 (Colo. App. 1999) (reasoning that an arbitration agreement's "reference to both 'arbitration' and 'litigation' in the attorney fee provision confirms that the parties contemplated that [a party] could, by court order, recover the attorney fees and costs irrespective of whether such were incurred in arbitration or litigation."). The reference to "litigation" in the Owner Agreement's attorney fees provision does not imply that the parties were leaving the door open for litigation—instead, it contemplates the possibility of litigation over the validity or enforceability of the arbitration clause. *See, e.g.*, *McGuire, Cornwell & Blakey v. Grider*, 765 F. Supp. 1048, 1050 (D. Colo. 1991) (noting that while challenges to the making or enforcement of a contract containing an arbitration clause "are to be decided by the arbitrator," courts may determine the validity of the arbitration clause itself) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-06 (1967)); *Grigsby v. Income Prop. USA, LLC*, No. 2:17-CV-1110, 2018 WL 4621766, at *5 (D. Utah Sept. 26, 2018) (stating that, while arguments attacking the contract as a whole must be sent to arbitration, the court may consider arguments "directed toward the arbitration clauses").

These findings foreclose Plaintiffs' strained interpretation of the Owners Agreement to mean that termination of the contract may "override" the arbitration clause.

*Response* [#23] at 4-5. Because the arbitrator has the authority to award "other legal and equitable remedies," no tension exists between the Owner termination provision and the rest of Paragraph 11. *Am. Owner Agreement* [#2-11], ¶ 11.2.2; *Bowen*, 254 F.3d at 937 (stating that "arbitrators have broad authority in fashioning remedies"). Additionally, the Court finds no ambiguity in the arbitration clause itself, which plainly applies to "any action or arbitration arising out of claimed default by either party under the Contract." *Am. Owner Agreement* [#2-11], ¶ 11.1.1. A strained reading must cede to a straightforward reading.

This is a "broad" arbitration clause because it pertains to "any action or arbitration arising out of claimed default by either party under this Contract[.]" *Am. Owner Agreement* [#2-11], ¶ 11.1.1; *compare Burlington N. and Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla.*, 636 F.3d 562, at 565-70 (10th Cir. 2010) (concerning "narrow" clause for arbitration of rate disputes) *and Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1260 (10th Cir. 2005) (concerning "narrow" clause limited to arbitration of disagreements with a party's actions to terminate an operating agreement) *with Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1059-60 (10th Cir. 2018) (construing "arising out of or relating to" as a broad arbitration clause). Plaintiffs have brought actions for "breach of contract, fraud, misinterpretation, concealment, negligence, conversion, unjust enrichment, defective construction, breach of express warranty, and unfair and deceptive trade practices" arising from "construct[ion] of a modular home in Hartsel, Colorado" which "is still not complete and is, in fact, uninhabitable." *Compl.* [#1], ¶¶ 1-2. Plaintiffs' Response [#23] does not argue that any one of their claims would fall outside the Owner Agreement's general arbitration clause—they instead argue that the clause was

"overridden" by termination. *Response* [#23] at 4-5. For the reasons previously discussed, the Court is unpersuaded. The Court finds that the allegations in the Complaint [#1] presumptively fall within the arbitration clause's broad scope. *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1219-20 (10th Cir. 2021) (stating that courts are required to rule a dispute arbitrable "where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand" and "the presumption is not rebutted") (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)).

Having found that the Amended Owner Agreement [#2-11] contains an enforceable arbitration clause, and that Plaintiffs' allegations fall within the clause's broad scope, the Court finds that Defendants' Motion [#22] should be **granted**.

### C.    Motion to Stay Discovery [#33]

Separately, Defendants have requested a stay of this case pending arbitration, in part because they allege that Plaintiffs have "unilaterally set Defendant Juan Rizzi's deposition for April 9, 2024." *Motion to Stay Discovery* [#33] at 1. Plaintiffs have filed a Response [#34], and Defendants have filed a Reply [#35]. Both parties discuss the five-factor test from *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). *Motion to Stay Discovery* [#33] at 2-6; *Response* [#34] at 2-10. While these are the factors the Court would ordinarily consider, the Court finds that a stay is mandatory. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, ... shall on application of one of the parties stay the trial of the action until such

arbitration has been had.

9 U.S.C. § 3. A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement. *See, e.g.*, *Nichols v. Google LLC*, No. 23-cv-01022-RMR-NRN, 2023 WL 5938917, at *2 (D. Colo. Sept. 17, 2023) (stating that "once a court concludes a valid arbitration agreement exists, the FAA mandates a stay of a judicial proceeding 'upon any issue referable to arbitration under an agreement in writing for such arbitration'") (quoting 9 U.S.C. § 3; citing *Am. Fam. Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016)).

Here, the Court has determined that the parties' dispute falls within the scope of a valid arbitration agreement; therefore, a stay is required upon Defendants' request. However, because administrative closure is the practical equivalent of a stay, the Court orders the case to be administratively closed. *See Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987) (construing administrative closure as the "practical equivalent of a stay"); *see also Green v. Fishbone Safety Sols., Ltd.*, 303 F. Supp. 3d 1086, 1101 (D. Colo. 2018) (denying motion to stay but administratively closing the case pending arbitration per the courts' "standard practice" in the District of Colorado). Accordingly, because the Court will administratively close this case, the Motion to Stay Discovery [#33] is **denied as moot**.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion to Compel Arbitration [#22] is

**GRANTED**.

IT IS FURTHER **ORDERED** that although Defendants' request for a stay is appropriate, the case shall instead be **ADMINISTRATIVELY CLOSED** pursuant to D.C.COLO.LCivR 41.2, subject to reopening for good cause.

IT IS FURTHER **ORDERED** that Defendants' Motion to Stay [#33] is **DENIED AS MOOT**.

Dated: May 17, 2024                                         BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge